# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 20-1044V
UNPUBLISHED

| | |
|---|---|
| JOHN TISDEL, | Chief Special Master Corcoran |
| Petitioner, | Filed: July 3, 2024 |
| v. | Special Processing Unit (SPU); Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA); Six Month Severity Requirement |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*John Robert Howie, Howie Law, PC, Dallas, TX, for Petitioner.*

*Jennifer A. Shah, U.S. Department of Justice, Washington, DC, for Respondent.*

## ENTITLEMENT DECISION[1]

On August 19, 2020, John Tisdel filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on August 22, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find Petitioner has not established that he suffered the residual effects of his injury for more than six months, and therefore dismissal of the claim is warranted.

---

[1] In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I.      Relevant Procedural History

In his Rule 4(c) Report, Respondent argues that Petitioner has not meet the severity requirement of the Vaccine Act, that onset of Petitioner's shoulder pain was not within forty-eight hours of vaccination, and that his symptoms are not indiciative of a SIRVA. ECF No. 32 at 6-7.

Petitioner thereafter filed a Motion for a Ruling on the Record on March 13, 2023, arguing that he meets the severity requirement and otherwise has established entitlement to compensation for a SIRVA Table Injury. Petitioner's Motion for Ruling on the Record and Response to Respondent's Rule 4(c) Report and Brief in Support Thereof ("Mot."), ECF No. 34. Respondent opposed the motion on May 12, 2023, reiterating the arguments set forth in the Rule 4(c) Report. Response to Petitioner's Motion for Ruling on the Record ("Opp."), ECF No. 36, at 3-6. The matter is ripe for resolution.

## II.     Petitioner's Medical Records

Petitioner's past medical history shows no previous injury or complaints of left shoulder pain.

Petitioner received a flu vaccine in his left shoulder on August 22, 2017. Ex. 13 at 2. Approximately three months later, on November 27, 2017, Petitioner saw his primary care provider, Dr. Janice McKenney, for an annual wellness visit. Ex. 6 at 59. At that time, he reported weakness, numbness, and pain with some motions in his left upper arm and shoulder "since getting the flu shot." *Id.* at 62. An examination showed normal strength and movement without pain, but tenderness in the left shoulder joint. *Id.* at 63.

Over a month later, on January 3, 2018, Petitioner saw Dr. McKenney for a follow-up related to hypertension. Ex. 6 at 56. There are no reports of shoulder pain at that time. *Id.* at 59. Then, Petitioner saw his chiropractor on January 10, 2018. Ex. 4 at 46. His complaints included pain and stiffness in his upper thoracic and mid thoracic regions, plus bilateral burning discomfort in both biceps and shoulders, which he asserted began "after traveling immediately after he retired in November." *Id.* An examination showed reduced range of motion in both shoulders but no painful movement, and he was diagnosed with left shoulder pain. *Id.* at 48. Between January 12 and 23, 2018, Petitioner saw his chiropractor three times for treatment of this bilateral upper extremity and thoracic pain. *Id.* at 40, 42, 44. No reference to the August 2017 vaccination is found in these records.

In addition, between January 23, 2018, and March 1, 2019, Petitioner had multiple health care appointments, including with his chiropractor and primary care physician. Ex.

2

6 at 56, Ex. 4 at 29. No mention of shoulder pain is contained in the records of these visits either.

The next time Petitioner reported shoulder pain is found in a record from December 12, 2018 – nearly *a year* after the last records memorializing such complaints. At that time, Petitioner saw Dr. McKenney, telling her that he had muscle aches in his left shoulder. Ex. 6 at 54. Petitioner also saw his chiropractor on five occasions between December 21, 2018 and January 18, 2019. Ex. 4 at 29-37. Only on one occasion (from a December 21st visit) did he state that his "left shoulder has been a continued issue since last year when he had an injection from a flu shot" to his chiropractor. *Id.* at 37.

On March 1, 2019, Petitioner saw primary care nurse Kristi Glanzer for a sore throat. Ex. 6 at 48. At that time, he also complained of left shoulder pain, stating "got a flu shot back in 08/2017 has had trouble since then". *Id.* at 50. The pain was described as aching, and intermittent, lasting twenty to thirty minutes several times a day. *Id.* Petitioner was diagnosed with adhesive capsulitis of the left shoulder. *Id.* at 51.

Petitioner next complained of left shoulder pain on May 24, 2019, relating it to a "flu shot back in 08/2017." Ex. 6 at 47. An MRI completed on July 10, 2019, found a full-thickness anterior supraspinatus tendon tear and a hooked, type III acromion and acromioclavicular arthropathy. *Id.* at 78.

On July 22, 2019, Petitioner returned to his chiropractor, reporting that he experienced left shoulder range of motion issues, but no pain, prior to his vaccination. Ex. 4 at 27. Petitioner saw Dr. McKenny several months later, on December 18, 2019, for hypertension and blood pressure. Ex. 6 at 40. An examination was positive for arthralgias and joint pain, but negative for left shoulder pathology. *Id.* at 43-44.

Petitioner broke his ankle in February of 2020, resulting in surgery. Ex. 6 at 31, 20. At post-surgical appointments, Petitioner did not mention shoulder pain although he was using crutches. *Id.* at 12, 16.

Throughout April and May of 2020, Petitioner returned to his chiropractor and reported that "his shoulder still hurts." Ex. 4 at 3, 5, 7, 11, 13, 17, 19, 23. On some occasions, Petitioner's left shoulder was specifically cited as in pain. *Id.* at 19, 23.

On May 7, 2020, Petitioner saw his orthopedist for a follow-up on his ankle surgery. Ex. 10 at 23. He reported he was still experiencing left shoulder pain, and was considering surgery that fall. *Id.*

Petitioner's affidavit describes his shoulder pain and how it has affected his life. Ex. 1. Petitioner states that he felt immediate pain after his flu vaccine, and first sought care on November 27, 2017. *Id.* at 1. He next sought care on May 24, 2019, but does not provide any explanation for the gap in treatment. *Id.* at 2.

### III.    Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.*, NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury.  *See* § 11(c)(1)(A)(B)(D)(E).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

### A. Petitioner Does Not Meet the Severity Requirement

At issue is whether Petitioner continued to suffer the residual effects of her SIRVA for more than six months. Section 11(c)(1)(D)(i) (statutory six-month severity requirement).

There is no dispute that Petitioner received the flu vaccine on August 22, 2017, and he therefore must preponderantly demonstrate that his residual symptoms continued at least through February 22, 2018. *See, e.g., Herren v. Sec'y of Health & Human Servs.*, No. 13-100V, 2014 WL 3889070, at *2 (Fed. Cl. Spec. Mstr. July 18, 2014); *see also*

*Hinnefeld v. Sec'y of Health & Human Servs.*, No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's injury resolved less than two months after onset).

The record establishes that Petitioner's initial treatment occurred between November 27, 2017 and January 2018. There are no records even containing reference to shoulder issues thereafter for nearly a year. And when Petitioner sought treatment in January 2018, he described *bilateral* shoulder pain that he attributed to traveling in November, as opposed to vaccination. Ex. 4 at 48. There are subsequently several gaps in the record – and although not all meaningfully bear on this analysis, Petitioner does not provide an explanation as to why he did not seek treatment throughout most of 2018, or the nine-month period between July 2019 and April 2020. Indeed, he attended medical appointments during this time, but did not describe any ongoing shoulder pain or range of motion issues. *See* Ex. 6 at 43-44 (appointment on December 18, 2019, with reports of joint pain but no left shoulder pathology).

Given the above, I cannot conclude that the record preponderantly establishes Petitioner's injury persisted for the six months required by the Act. Petitioner ceased treatment (for an injury he did not consistently associate with vaccination) before the six month "cut off," and then delayed follow-up for eleven months after, despite due opportunity to seek care for a chronic and persistent problem. And even once he did again begin to complain of shoulder pain he thought was vaccine-associated, more gaps occurred. Such a fact pattern overall preponderates in favor of a finding that any initial vaccine issues had ended before the severity deadline, and then that intervening factors are more likely explanatory of Petitioner's subsequent shoulder complaints.

### Conclusion

Because Petitioner has failed to meet the severity requirement set forth in Section 11(c)(1)(D)(i), Petitioner cannot establish entitlement, and therefore I must **DISMISS** his claim in its entirety. In the absence of a timely-filed motion for review (see Appendix B to the Rules of the Court), the Clerk of Court shall enter judgment in accord with this Decision.[4]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[4] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.